UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN CHRISTIAN NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01061-RLY-MPB |
| ) | |
| KILOLO KIJAKAZI, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON**
**APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 19). Plaintiff John N.[1] seeks judicial review of the Social Security Administration's final decision deeming him ineligible for Disability Insurance Benefits (DIB). An opening brief (Docket No. 17) and response brief (Docket No. 18) have been filed. The time for a reply brief has passed without submission. It is recommended that the District Judge **AFFIRM** the decision of the Commissioner of the Social Security Administration finding that Plaintiff John N. is not disabled.

**I.     PROCEDURAL BACKGROUND**

On August 4, 2016, John N. filed an application for DIB under Title II of the Social Security Act, alleging disability beginning February 15, 2013. (Docket No. 15-5 at ECF p. 2).

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

His application was denied initially and upon reconsideration. (Docket No. 15-3 at ECF p. 11, 22). On August 9, 2018, Administrative Law Judge Janice M. Bruning conducted a video hearing at which John N. appeared unrepresented. (Docket No. 15-2 at ECF pp. 62-74). During the initial hearing, John N. requested a continuance to seek representation, which was granted. (*Id.*). A subsequent hearing was held on November 1, 2018, at which John, his counsel, and an impartial vocational expert appeared and testified. (Docket No. 15-2 at ECF pp. 39-61). On February 20, 2019, the ALJ issued a decision finding that John was not disabled. (Docket No. 15-2 at ECF pp. 16-33). On February 7, 2020, the Appeals Council denied John's request for review, thereby rendering the ALJ's decision the agency's final decision for purposes of judicial review. (Docket No. 15-2 at ECF pp. 2-4). On April 6, 2020, John timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying his benefits. (Docket No. 1 at ECF p. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

John raises three separate reversible errors. First, he argues that the ALJ committed legal error by assigning "no weight" to John's Veteran's Administration Disability Rating. Second, he argues that the Commissioner committed legal error pursuant to Social Security Ruling 16-3p by discrediting the claimant for his failure to obtain certain treatments without first considering his explanations for this lack of treatment. Third, he argues that the ALJ's decision fails to adequately account for the entirety of the Consultative Examiner's medical opinion.

## II.   STANDARD FOR PROVING DISABILITY

Under the Social Security Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

2

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given

his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III. STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she has made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

## IV. FACTUAL BACKGROUND

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that John was not disabled. (Docket No. 15-2 at ECF p. 32). At step one, the ALJ found that John met the insured status requirement through December 31, 2019, and had not engaged in substantial gainful activity[2] since February 15, 2013, the alleged onset date. (Docket No. 15-2 at ECF p. 18). At step two, the ALJ found that John had the following "severe impairments: spinal disorder, right shoulder disorder, obesity, posttraumatic stress disorder, anxiety and depression." (Docket No. 15-2 at ECF p. 18). At step three, the ALJ found that John did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Docket No. 15-2 at ECF p. 20). After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except, the claimant should never climb ladders, ropes or scaffolding and no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend or twist. The claimant may reach in all directions no more than frequently with his right upper extremity. The claimant can understand, remember and carry out no more than simple routine tasks, performing the same tasks day in and day out, with no public contact for work related purposes and no more than occasional contact with co-workers and supervisors. The claimant may not work in teamwork situations (not be required to work with others to complete the same job task(s)), but can work independently. He can have no strict quotas (not engage in work where someone is checking up on the claimant to make sure he is on pact with a set goal, quota, or with other employees), but can do work where performance is measured by what is completed at the end of the workday.

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

(Docket No. 15-2 at ECF pp. 23-24). At step four, the ALJ found that John was unable to perform any past relevant work. (Docket No. 15-2 at ECF p. 31). At step five, considering John's age, education, work experience, and RFC, as well as the VE's testimony, the ALJ found that John could perform other work through the date of the decision with jobs existing in significant numbers in the national economy, including a mail clerk, office helper, and housekeeping cleaner. (Docket No. 15-2 at ECF pp. 31-32).

## V.  DISCUSSION

As described at the outset, John makes three assertions of error. The Court addresses each in turn.

### 1.  Veteran's Administration Disability Rating

John argues that the ALJ erred when she assigned the VA's decision "no weight" as Social Security Ruling 06-03p, which was in effect at the time of John's application, provided that evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered. He argues that courts have repeatedly held that the Veteran's Disability Ratings—particularly those findings that a claimant is unemployable due to his impairments—remain persuasive despite the differences between the two programs' criteria for determining disability. (Docket No. 17 at ECF p. 8). He further argues that the Seventh Circuit requires ALJs to assign the VA's determination at least "some weight." John argues this issue is of particular import in this case where he has a well-documented and involved service-related post traumatic stress disorder ("PTSD").

The Commissioner responds that the ALJ did not ignore the VA disability determinations when making her decision and, instead, reasonably considered and expressly gave no weight to the VA disability determinations that John was disabled to varying percentage degrees due to

6

service-connected disabilities. Furthermore, the Commissioner argues that John has not identified any functional limits contained in the medical source opinions that that the ALJ failed to credit or otherwise illustrated that giving the VA determinations "some weight" instead of "no weight" would have changed the ALJ's decision to any demonstrable degree.

While the Social Security Administration is not bound by the findings of another agency, the Seventh Circuit has instructed that an ALJ should give disability determinations made by the VA "some weight." *Alford v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006) (citing *Davel v. Sullivan*, 902 F.2d 559, 560-61 n.1 (7th Cir. 1990)). In short, an ALJ must consider a VA determination. *See Quintana v. Colvin*, 2016 WL 775932, at *3 (S.D. Ind. 2016) ("The Court acknowledges that a disability rating of 30% falls short of a determination that Quintana is disabled and unable to work. Nonetheless, under S.S.R. 06-03p and controlling case law, the ALJ was required to consider the disability determination. . ."); S.S.R. 06-03p ("evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered").

John began receiving disability benefits from the Department of Veterans Affairs around April 2011 for service-connected conditions (strain in right shoulder and both knees) with an overall combined rating of 50%. (Docket No. 15-9 at ECF p. 23). Eventually, John's PTSD was added as a service-connected condition assigned to 50%. The records also indicate that his overall combined rating increased over time. For example, an April 10, 2014, letter indicates that John's PTSD had worsened, so an increase from 50% to 70% was warranted, but entitlement to 100% remained denied because it wasn't shown that John was unable to work as a result of service-connected disabilities. (Docket No. 15-9 at ECF p. 16). On June 29, 2016, the

Department of Veteran Affairs granted entitlement to individual unemployability effective February 26, 2013. (Docket No. 15-7 at ECF p. 162).[3]

Here, the ALJ acknowledged the VA's finding that John N. was disabled, but gave the opinions "no weight," stating:

> These determinations are not expressed in terms that are consistent with the Social Security Administration criteria for disability determinations. Further, these documents do not list actual functional limitations, nor do they refer to the medical record for support. As such, the undersigned gives these opinions no weight. However, the undersigned has considered the claimant's PTSD, spinal disorder, complaints of knee pain, and right shoulder disorder in developing the extensive limitations in the above residual functional capacity.

(Docket No. 15-2 at ECF p. 29). This is not a case where the ALJ clearly failed to consider the Department of Veteran Affair's determination in violation of S.S.R. 06-03p, but while the Seventh Circuit has rejected the Ninth Circuit's approach to give the disability determinations by the VA "great weight," it still says the VA's disability determination is entitled to "some weight." *Allord*, 455 F.3d at 820 (citing *McCartey v. Massanari*, 298 F.3d 1072, 1075-76 (9th Cir. 2002)). The Commissioner does not confront the holding from *Allord* in its response brief.

Nevertheless, I find that the ALJ's "good reasons" for discounting the VA determinations, the ALJ's review of the medical opinions by VA-employed physicians, and John's failure to identify any functional limits contained in the medical source opinions that the ALJ failed to credit are sufficient and any error by the ALJ on this issue is harmless. First, the ALJ gave good reasons for discounting the VA determinations. She explained that they used a different standard than the one used for Social Security disability. (Docket No. 15-2 at ECF p. 29). In particular, the

---

[3] Another record from the Department of Veteran Affairs confirmed that effective January 1, 2015 John was receiving 100% rate of benefits because he was unemployable due to his service-connected disabilities. (Docket No. 15-8 at ECF p. 94).

ALJ noted that the VA determinations did not list actual functional limits, nor did they refer to the medical record for support of their conclusions. (*Id.*). These are all accurate statements and sound reasons for why the ALJ could not reasonably rely on this evidence in making her assessment as to John's residual functional capacity.

Second, the ALJ provided a thorough review of medical opinions by VA-employed physicians. It appears that, at least, Brian Gallagher (to whom the ALJ assigned "good weight") and Sofia Marsano-Jozefowicz (to whom the ALJ assigned "some weight") were fully analyzed. (Docket No. 15-2 at ECF pp. 29-30). *See Weathington v. Colvin*, 2013 WL 5321518, at *11 (S.D. Ind. Sept. 20, 2013) (ALJ's failure to address VA disability determination was harmless in light of other evidence, namely the ALJ's review of medical opinions by VA-employed physicians). "The Seventh Circuit gives VA determinations 'some weight' instead of 'great weight' because there are differences in the standards of the two administrations." *Id.* Thus, the ALJ would not have been required to adopt the VA's disability determinations as conclusive evidence and would have, necessarily, had to review the findings that the VA found persuasive in coming to those determinations. *See id.* The ALJ did this by reviewing the opinions of the VA physicians.

Finally, John has not identified any functional limits contained in the medical source opinions that the ALJ failed to credit. He suggests that his PTSD would cause further limits, but does not identify any specific medical source opinion or medical evidence from the relevant insured period to corroborate any additional limits on his ability to work. He has not demonstrated that giving the VA determinations some weight would have changed the ALJ's decision to any demonstrable degree, since the ALJ already included a wide variety of mental limits for simple work, limited interaction, pace, and quota restrictions that accommodated his mental impairments of PTSD, depression, and anxiety. (Docket No. 15-2 at ECF p. 23-30).

9

**2. ALJ's Analysis of Plaintiff's Symptoms**

Next, John contends the ALJ committed error because she discredited him for his failure to pursue more intensive treatment for his physical and psychiatric impairments without considering why John did not pursue more intensive treatment, which is a violation of Social Security Ruling 16-3p. John argues that the regulation sets forth a responsibility on the part of the Commissioner that was not met in this case, and the ALJ's assumption here taints the whole of the record by supporting a conclusion that John's impairments are, as the ALJ perceived it "not as pervasive or as limiting as alleged." (Docket No. 15-7 at ECF p. 27). The Commissioner does not respond to this argument on its head and, instead, focuses on the "variety of other reasons" that the ALJ gave in evaluating the impact of John's alleged symptoms.

This Court does not disturb an ALJ's symptoms evaluation finding (previously referred to as a "credibility" finding) unless it is "patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (internal citation omitted). This deference is not unlimited, however. An ALJ must identify specific reasons for the symptom evaluation finding, supported by references to the evidence in the record, and addressing other relevant factors. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citing SSR 96-7p)). My task is "merely [to] examine whether the ALJ's determination was reasoned and supported"—whether the ALJ considered the entire record and gave specific reasons for the weight given to a claimant's statement of those of others. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The Social Security Administration replaced SSR 96-7p, 1996 WL 374186, with a new ruling, SSR 16-3p, Evaluation of Symptoms in Disability Claims, 81 FR 14166 (March 16, 2016), which went into effect prior to the ALJ's February 2019 decision. SSR 16-3p abandons the use of the term "credibility" and instead focuses on determining the "intensity and persistence

of [the claimant's] symptoms." Federal courts look to the new policy statement in SSR 16-3p to evaluate an ALJ's decision, but remain bound by case law concerning the same regulatory process under the "credibility" analysis of former SSR 96-7p and its "credibility" analysis. *Farrar v. Colvin*, 1:14-cv-6391, 2015 WL 3538827, at *4, n.3 (N.D. Ill June 29, 2016).

In relevant part, SSR 16-3p provides:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

*Soc. Sec. Ruling 16-3p: Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016).

Here, the ALJ commented as follows regarding John's failure to pursue certain treatment options:

> If the pain was as limiting as alleged, it is reasonable to believe that the claimant would pursue the recommended course of treatment. *However, as set forth in detail above, the claimant repeatedly stopped taking medication when prescribed, indicating that the pain was not as great as alleged*. Further, the record shows that the claimant has refused all further treatment since August 2017, including injections that have provided relief and surgery. *His refusal to pursue such recommended treatment suggests that his pain is not as pervasive or limiting as alleged*.

11

(Docket No. 15-7 at ECF pp. 26-27) (emphases added).[4]

Social Security Rule 16-3p does not require an ALJ to ask a claimant about his failure to seek or follow through with treatment. It provides that if the ALJ is going to use a failure to seek or continue medical treatment to draw a negative inference as to the claimant's symptoms, then the ALJ "must" consider possible reasons for that failure. SSR 16-3p; *See Deborah M. v. Saul,* 994 F.3d 785 (7th Cir. 2021). Here, the ALJ did err by not considering if there were good reasons why John declined repeat surgery and injections as related to his neck and shoulder pain before the ALJ concluded that forgoing this treatment indicated that his pain was not as great as alleged. But, this error was harmless because this was just one of several factors the ALJ considered when conducting the symptom evaluation analysis. John therefore shows no reversible error. *See Kittelson v. Astrue,* 362 Fed. Appx. 553, 558 (7th Cir. 2010) (ALJ should have considered the reasons for claimant's lack of treatment; however, ALJ's error in credibility analysis is harmless when ALJ articulates other reasons for adverse credibility determination).

For example, the ALJ considered whether the objective medical findings corroborated John's allegations that he had a chronic, disabling degree of pain that precluded all work. The ALJ considered that John had right shoulder tenderness since the 1990s and medical findings during the relevant period at issue showed stable, mild degenerative changes in the shoulder joint that were treated with physical therapy in 2013, resulting in decreased pain and increased strength. (Docket No. 15-2 at ECF pp. 24-25). The ALJ noted the objective electromyogram and

---

[4] There are other instances where the ALJ commented, to some degree, that John did not follow medical advice, but in those instances the ALJ did not draw an inference that John's symptoms were inconsistent with the evidence in the record. *See, e.g.*, (Docket No. 15-2 at ECF p. 25) ("Though the claimant had been prescribed pain medication while in physical therapy, he stopped taking the medication."); (Docket No. 15-2 at ECF p. 25) ("[A]lthough the claimant again stopped taking his medications as prescribed."); Docket No. 15-2 at ECF p. 28) ("However, the claimant declined any further [therapy sessions].").

nerve conduction studies showed no neuropathy. (*Id.*). The ALJ reasonably considered these normal objective medical findings and pursuit of various treatment modalities to evaluate the intensity and persistence of John's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) ("Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

Notably, although John's treating physicians did not place any specific limitations on his functioning, the ALJ accommodated his allegations of pain and other symptoms with a light work restriction on lifting, carrying, standing, and walking, with additional postural and reaching limitations. (Docket No. 15-2 at ECF pp. 23-30). These restrictions were consistent with state agency physicians' assessment that included less restricted lifting, carrying, walking, and standing limits to accommodate John's impairments and symptoms. (Docket No. 15-3 at ECF pp. 7, 18).

The ALJ also considered John's range of activities despite his symptoms, including John's own reports to the treating and examining medical sources that he was very active at the gym, going three times per week, and did household chores, such as yard work, cleaning, laundry and household repairs, without complaint. (Docket No. 15-2 at ECF p. 27, referring to Ex. 15/F/19, 18F/13, and 4E at Docket No. 15-10 at ECF p. 70; Docket No. 15-11 at ECF p. 64; Docket No. 15-6 at ECF pp. 23-30). In addition to these activities, the ALJ also considered that John gave contradictory statements about the reasons he stopped working, alternatively claiming that he

13

quit the job held prior to applying for disability benefits in order to move from Illinois to Indiana rather than due to his impairments, or that he quit because he had difficulties getting along with other employees. (Docket No. 15-2 at ECF p. 27, referring to statements at Docket No. 15-6 at ECF p. 3 and Docket No. 15-7 at ECF p. 158).

As demonstrated in the ALJ's decision, the ALJ reasonably considered John's statements about his activities, in addition to the objective medical corroboration of his symptoms, treatment to reduce his symptoms, and medical source opinions about the impact of his symptoms on his functioning, and found his allegations of a disabling degree of symptoms were not consistent. (Docket No. 15-2 at ECF pp. 23-30). John has not adequately challenged these varied and comprehensive reasons given by the ALJ to assess the impact of his symptoms on functioning, instead John focuses on one paragraph in multiple pages of analysis. Further, even focusing on that one paragraph, John has not explained how he was harmed by the ALJ's failure to explore his reasons. *See Summers v. Colvin*, 634 Fed. Appx. 590, 592 (7th Cir. 2016) (unpublished) ("And even if the ALJ had concluded that the gaps undermined Summers's credibility, she has not explained how she was harmed by the ALJ's failure to explore her reasons.").

The ALJ gave well-supported reasons based on the evidence in conducting her symptom evaluation analysis. "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

3. **ALJ's Review of Consultative Examiner's Opinion**

Finally, John argues that the ALJ should have accounted for certain restrictions set forth in consultative examiner Dr. Scruton's psychological examination report. In particular, he contends that the ALJ overlooked limits that accommodated Dr. Scruton's objective findings of

somewhat flattened affect, agitation, and pressured manner. John also contends that the ALJ omitted Dr. Scruton's observation that John's mild degree of post-traumatic stress disorder may have been the result of John avoiding those situations that are triggers of his anxiety and agitation. The Commissioner argues that contrary to John's suggestion, the ALJ did account for Dr. Scruton's opinion.

The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it. 20 C.F.R. § 404.1527(c)-(d); *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993) (noting that SSA must consider all credible medical evidence). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence. 20 C.F.R. § 404.1527(c).

Here, the ALJ considered the opinion of Dr. Scruton, who conducted the psychological consultative examination of John and opined that he "had significant difficult tolerating coworkers and others." (Docket No. 15-2 at ECF p. 29, citing Docket No. 15-7 at ECF pp. 155-59).[5] The ALJ noted that Dr. Scruton's opinion was consistent with Dr. Scruton's "observation

---

[5] The ALJ's factual recitation of Dr. Scruton's examination, which took place earlier in the decision was as follows:

> [I]n October 2016, the claimant underwent a psychological consultative examination, the findings of which do not support greater limitations that those adopted above (5F [Docket No. 15-7 at ECF pp. 155-159]). The claimant reported a history of traumatic events during his military service, including witnessing violent combat deaths. He also reported experiencing PTSD symptoms for seven years, including nervousness in crowds, frequent traumatic memories, nightmares, chronic agitation, irritability, anger control problems and sleep disruption. While the claimant also reported occasional concentration problems, he displayed no signs of a thought disorder. Overall, the examiner did not document any observed mental abnormalities.

(Docket No. 15-2 at ECF p. 28).

15

that [John] appeared agitated and pressured at times." (*Id.*). In assigning Dr. Scruton "some weight," he noted that while Dr. Scruton was a specialist, he was not John's treating physician. This is a reasonable basis to adjust the weight assigned. 20 C.F.R. § 404.14527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources."). The ALJ then noted that she "limited the claimant's contact with others noting that the claimant is able to be around other [sic] such as in a store, at a gun range, in the gym and at festivals." (Docket No. 15-2 at ECF p. 29).

John's contention that the ALJ overlooked limits that accommodated Dr. Scruton's objective findings of a somewhat flattened affect, agitation, and pressured manner due to the ALJ's comment that Dr. Scruton observed no mental abnormalities is unpersuasive. The ALJ's decision discussed these objective findings. (Docket No. 15-2 at ECF p. 29). Moreover, the undersigned is unpersuaded by John's argument that the ALJ erred by not explicitly considering Dr. Scruton's observation that John's mild degree of post-traumatic stress disorder may have been the result of John avoiding those situations that are triggers of his anxiety and agitation. John also told the psychologist that his symptoms were relatively mild recently due to the effects of his current medication. (Docket No. 15-7 at ECF p. 158). Moreover, contrary to John's suggestion, the ALJ gave some weight to Dr. Scuton's opinion and recognized that the psychologist opined John would have significant difficulty tolerating co-workers and others. (Docket No. 15-2 at ECF p. 29). Consequently, the ALJ limited John's interaction with others to no contact with the public for work-related purposes, no more than occasional contact with co-workers and supervisors, no teamwork situations, and independent work tasks that did not have strict quotas that would be checked by other employees. (Docket No. 15-2 at ECF pp. 23-24). John makes no argument as to how these limits do not adequately account for the "triggers" that

Dr. Scruton referred to in his report nor does he make any citation to the record to support his contention that by "triggers" Dr. Scruton referred to "workplace situations." (Docket No. 17 at ECF p. 13).

Further, the consultative examiner's findings were submitted to expert review by the state agency psychological consultants who opined that the claimant could perform semi-skilled tasks without prolonged and intense social interactions required and to whom the ALJ also assigned "some weight." (Docket No. 15-2 at ECF p. 29, citing Docket No. 15-3 at ECF pp. 2-10, 12-21). As the ALJ expressly stated, she gave some weight to the state agency physicians' opinions assessing a range of medium work capacity, but assessed slightly greater limits for a range of light work based in part on John's symptom allegations, and additional medical evidence submitted after their opinions that provided support for those added limits. (Docket No. 15-2 at ECF pp. 24-30). In sum, John has not identified any additional functional limitations opined by Dr. Scruton (or by any medical source opinion) that were not included in the ALJ's residual functional capacity. The ALJ's decision is supported by substantial evidence.

## VI. CONCLUSION

For all these reasons, the Magistrate Judge **RECOMMENDS** that the Court **AFFIRM** the ALJ's. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 20th day of August, 2021.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.

Case 1:20-cv-01061-RLY-MPB Document 21 Filed 08/20/21 Page 18 of 18 PageID #: 1335